FILED

2010 Mar-31  PM 12:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN  DIVISION

| | |
|---|---|
| JOSEPH M. POWELL | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]      **CV-08-BE-1024-S** |
| | ] |
| O'NEAL STEEL, INC., | ] |
| | ] |
| **Defendant.** | ] |
| | ] |
| | ] |
| | ] |
| | ] |
| | ] |

## MEMORANDUM OPINION

This matter is before the court on "Defendant's Motion for Summary Judgment." (doc. 32).  Plaintiff responded to the motion (doc. 32), and Defendant  replied (doc. 38); this motion has been fully briefed.  For the reasons stated in this Memorandum Opinion, the court finds that Defendant's motion for summary judgment is due to be GRANTED in its entirety and judgment entered in favor of Defendant as a matter of law.

## I.  PROCEDURAL HISTORY

On June 9, 2008 Plaintiff John Nation, Jr. filed this suit against O'Neal Steel, Inc., alleging race discrimination and discriminatory retaliation pursuant to Title VII of the Civil Rights Act of 1984 and 42 U.S.C.  § 1981. (doc. 1).  With the court's permission, the First Amended Complaint (doc. 16) added  Joseph M. Powell as a party Plaintiff.  Although other judges initially presided over the case, the case was reassigned to this judge in February of 2009.

On May 26, 2009, the parties stipulated to the dismissal with prejudice of the claims of Plaintiff John Nation, with the claims of Plaintiff Joseph Powell to remain. (docs. 29 & 30).   On May 27, 2009, the court dismissed Plaintiff Nation as a party Plaintiff and dismissed with prejudice his claims against O'Neal Steel. (doc. 31).   On June 29, 2009, Defendant filed a motion for summary judgment as to both counts against O'Neal Steel. (doc. 32).   In his response, Powell stated that he would pursue only his retaliation claim - Count II of the Amended Complaint. (doc. 36, at 32).

## II.  FACTS[1]

The court views the following facts in the light most favorable to the Plaintiff.

Plaintiff, Joseph Powell, is an African-American man, who began working for Defendant, O'Neal Steel, Inc., as a welder on February 9, 2004 and who is currently an O'Neal Steel employee.  Welding Supervisor Kevin Hyche, a white man, supervised Powell from 2006 until January 2009.

Sometime in early March 2008,  Hyche first advised Powell that he was temporarily denying him overtime work. Based on Powell's deposition testimony, O'Neal Steel sets the date Hyche first communicated that decision as Tuesday, March 4 or Wednesday, March 5, 2008[2].  In

---

[1] The court notes that Plaintiff's response to Defendant's statement of facts did not provide the assistance that this court has a right to expect from counsel.  The vague and therefore unhelpful word "Disputed" followed by a list of deposition page numbers, with no further elaboration on exactly what is disputed and why, makes this court's job much more difficult.  Of Defendant's twenty-seven facts, Plaintiff disputed twenty-one in this manner.  The court read the entirety of Powell's deposition and the cited pages of others.  If, somewhere lurking in the maze of cites to depositions, some dispute of a genuine issue of material fact exists that the court did not surmise, the failure to clearly state the dispute caused or contributed to this omission.

[2] Powell testified repeatedly that he *first* learned he would not be eligible for overtime when he received the five-day productivity evaluation, on Tuesday or Wednesday *before* the

his brief, Powell sets the date sometime between Friday, March 7[3] and Monday, March 10[4].

Regardless of the calendar date, Hyche first communicated to Powell that decision at the same

time he gave Powell a productivity evaluation, a supervisor's feedback form that was a five-day

review of his welding.   In the presence of another employee, Gary Silmond, Hyche asked Powell

March 7, 2008 meeting with O'Neal Steel management.
> Q.  Before that [Friday] meeting, though, Kevin had given you that slip of paper –
> already given you that slip of paper about the overtime; correct?
> A.  Before that meeting, Kevin had told me – he had gave me that slip of paper, and
> he had accused me of stealing the tips. . .
> . . .
> Q.  How long before that meeting on Friday was it when Kevin gave you that slip of
> paper about the productivity?
> A.  It was during maybe the beginning of the week; maybe Tuesday or Wednesday, I
> can't recall, but it was during the same – all of this happened like bam, bam, bam.
> (Powell dep. 51-52)
> . . .
> Q.  And I think you told me that same week, either Tuesday or Wednesday, Kevin
> told you that you weren't going to work overtime anymore because of the
> productivity?
> A.  Tuesday or Wednesday, right.
> (Powell dep. 109).

[3] Under questioning from his own attorney at his deposition, Powell testified that he did
not learn that he was ineligible for overtime until *after* he accused Hyche of racism in the
welders' meeting. In his deposition testimony, Plaintiff acknowledged being confused about the
date of the welders' meeting.  Plaintiff's Additional Undisputed Fact 13 sets this welders meeting
on the morning after the welding tip incident "probably 3/6/08."  However, in the argument
section of his brief, Powell sets the welders' meeting on the morning of March 7, 2008  (doc. 36,
at 15 & 25), a date that agrees with O'Neal Steel's evidence and arguments. (*See, e.g.,* Russell
dep. 25-27; doc. 34-9 - Russell's reference to the welders' meeting as "in the morning gathering
meeting" in her notes on the management meeting with Powell dated March 7, 2008; and
Defendant's Undisputed Fact 15).  Because the argument in Powell's own brief sets the welders'
meeting on March 7, the court deems that Powell has accepted this date.

[4] Powell's Additional Undisputed Fact 51 states that "from the date the Time Study
began, March 10, 2008. . . Hyche completely banned Powell from working overtime." (doc. 36,
at 12).

to read the productivity evaluation and sign it.  Hyche told Powell in front of Silmond that Powell would not receive overtime until his productivity improved. Subsequently, Hyche advised Powell that Hyche would be the person determining whether his productivity had improved enough to merit resumption of overtime.  Powell consistently testified that this communication occurred as he was leaving work for the day.

On Wednesday, March 5, 2008, Hyche's vehicle was parked next to Powell's truck, and Hyche saw welding tips in the back of Powell's truck.  If the welding tips belonged to O'Neal Steel, they should not have been in an employee's truck; the company collects the welding tips and requires its employees to turn them in for scrap.  When another employee, Randy Constance, arrived, Constance took a picture with his camera phone of the welding tips in the back of Powell's truck, and emailed the picture to Randle Cunningham, the company's Operations Manager, who is a white man.  At some point, Hyche talked to Cunningham about the welding tips.  Cunningham told Hyche that he could not let Powell leave the property with anything that belonged to O'Neal Steel.

Later on March 5, Hyche confronted Powell, again bringing Silmond, as a witness. Hyche asked whether the welding tips in the back of his truck belonged to O'Neal Steel.  Powell said they did not.  Hyche repeated, five times in all, that the tips belonged to O'Neal Steel, and Powell said that "no, those tips came from Chicago Bridge," his previous employer. (Powell depo. 37).  Powell then walked away.

Subsequently, Powell called Jackie Russell, the company's Human Resource Manager, who is an African-American woman, to talk about the incident, and they met on Thursday, March 6, 2008. (Powell dep. 39). At the meeting, Russell informed Powell that O'Neal Steel accepted

4

his statement that the welding tips were his property and the company considered the matter settled.

On Friday, March 7, 2008, at the daily morning meeting of all company welders, Hyche asked Powell if he had anything to say.  Powell responded in front of the other welders that he thought Hyche "was a racist and prejudiced and he discriminated against me."  (Powell dep. 43). Powell does not recall explaining at the welders' meeting what Hyche had said or done to cause him to make this accusation; he assumed Hyche knew the reason why.  According to Powell, Hyche "just stood there.  He was cool.  He did not seem like he was upset or anything at the time." (Powell dep. 44).

Hyche told Cunningham what Powell had said in the welders' meeting, and Cunningham met later that day with Powell, Hyche, and Russell.  In that later meeting, Powell stated that Hyche was prejudiced and had accused Powell of lying and stealing.  Cunningham told Powell that "if he had a supervisor that was racist and discriminated against a certain group of people; [sic] Jews, blacks, whites, or whatever, that it would upset him, and that he would do all in his power to get rid of them."  (Powell dep. 41).  Cunningham also told Powell, however, that the company would not tolerate accusations of prejudice.  When Cunningham asked why Powell thought Hyche was prejudiced, Powell focused on the welding tip incident and subsequently mentioned his productivity evaluation.  Cunningham also acknowledged that Powell appeared upset about the welding tip incident and Cunningham apologized for any misunderstanding. Hyche did not apologize.  Cunningham advised Powell, however, that Powell's comments about Hyche were insubordinate and should not be repeated, and Russell also told Powell that "he was disrespecting his supervisor when he made that statement."  (Russell dep. 65).  Cunningham and

Russell later testified that they felt Powell's accusation at the welders' meeting was inappropriate because of the setting – it occurred in an open meeting instead of privately through appropriate channels; however, they acknowledged that they did not specify to Powell that the setting was what rendered it inappropriate. Russell reiterated that she would take any documentation of the welding tip incident out of Powell's file and tear it up. After this meeting, neither Hyche nor Cunningham nor Russell brought up the issue of the welding tips, and they did not further investigate Powell's accusation against Hyche.

In that March 7 meeting, the group also discussed Powell's negative productivity evaluation, and Cunningham and Russell learned that Hyche had not given Powell a clear understanding of what jobs he should do each day. Cunningham and Russell told Hyche that he should communicate to Powell each morning which jobs he should do that day, and Russell also told Powell that she would remove the five-day productivity evaluation from his personnel file. She threw the evaluation away after the meeting.

The O'Neal Steel handbook instructs as follows: "Employees who consider that the company under this policy has not afforded them fair treatment should contact their supervisor or a representative from human resources." (Cunningham dep. 69).

On March 10, 2008, O'Neal Steel began a "Time Study," run by Hyche's brother, to gauge the average length of time during which a welder should complete certain weldments. The record does not reflect whether the company conducted time studies on any welds other than the specific welds that Powell handled. Three welders participated in the time study, and their average welding time to produce a specified part was 40 minutes. Powell's production reports reflect the following average welding times to produce the same part was: 66 minutes in February

6

2008; and 50 minutes in March 2008.

On March 13, 2008, Powell filed an EEOC charge, alleging racial discrimination "in that I have been told that I can not work overtime or make sub-parts as the White employee stationed next to me is allowed [and] I have been instructed by my supervisor how much work I must complete during my shift."  (doc. 39-10).  On March 17 or 18, 2008, O'Neal Steel received Powell's EEOC charge.

Before these March 2008 incidents, Powell frequently worked overtime and earned a significant part of his salary from overtime compensation.  Powell's records indicate that he worked an overtime assignment on March 4, 2008[5]  and then did not work overtime assignments again until September or  October of 2008, when he became responsible for welding a different, simpler part.  Powell's co-workers continued to work overtime during that period.  Hyche testified that he took Powell's overtime away because Powell was not producing as much as he should during his regular work hours, and Hyche did not think Powell should be given overtime pay to complete that work.

Hyche issued a Performance Evaluation on Powell dated June 14, 2008. His rating on a 5-point scale, with 3 meaning "Consistently meets standards," 4 meaning "Consistently meets and sometimes exceeds standard" and 5 meaning "Exceeds standards," include:   a 3.7 for Attendance, a 2.7 for productivity, a 3.1 for quality and a 3.0 for safety.  Powell refused to sign

---

[5]The evidence indicates that although Powell also had "overtime" on March 7 and 8, 2008, he did not work overtime *assignments* on those dates.  On March 8, 2008, he was attending a training class rather than working traditional overtime, and the March 7, 2008 overtime was just eight additional minutes.  The evidence reflects that after March 4, 2008, Powell did not resume working overtime assignments until September or October of that year.  On August 29, 2008, Powell worked fifteen additional minutes, listed as "overtime," but he did not work an overtime assignment.

the evaluation on July 2, 2008 because he felt that he deserved better than a 3.1 overall rating.

In past work evaluations, Hyche gave Powell an overall score of 3.0 in 2006 and an overall score

of 4.0 in 2007.  Because of a "step" program providing different raises for newer employees,

Powell received a 5% raise in 2006, a 4% raise in 2007, and an even lower raise in 2008.

### III.  LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary

judgment allows a trial court to decide cases when no genuine issues of material fact are present

and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a

district court reviews a motion for summary judgment it must determine two things: (1) whether

any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support

its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)  In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S.

9

at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## IV.  DISCUSSION

### A.  COUNT I: RACIAL DISCRIMINATION

In his brief, Powell acknowledges that he is no longer pursuing his claim for racial discrimination and that the only viable claim is for retaliation. Accordingly, the court finds O'Neal Steel's motion for summary judgment is due to be GRANTED as to the claim for racial discrimination set forth in Count I.

### B.  COUNT II: RETALIATION

The court will proceed to address the claims set forth in Count II for retaliation based on his complaint(s) about racial discrimination, brought pursuant to Title VII and § 1981. To establish a *prima facie* case of retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981, without direct evidence of retaliation, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action; and (3) that some causal relation existed between the two events. *Butler v. Ala.*

10

*Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008); *see Goldsmith v. Bagby Elevator,* Inc., 513 F.3d 1261, 1277 (11th Cir. 2008) (stating that Title VII and § 1981 have the same *prima facie* standard for retaliation claims).

    1.  Protected Conduct

    Count II of the Amended Complaint, entitled "Retaliation," generally states that Plaintiffs "objected to Defendant's racially discriminatory practices" and specifically refers to the filing of an EEOC charge as protected activity.  (doc. 16, ¶¶ 30 & 31).   The EEOC charge clearly represents protected conduct within the meaning of Title VII and § 1981.

    In his brief, Powell elaborates on and expands that allegation of retaliation.  Instead of limiting his protected conduct to filing the EEOC charge, however, Powell also argues that he engaged in protected conduct when he twice objected to Hyche's alleged racially discriminatory actions: first in the welders' meeting, which he sets on the morning of March 7, 2008, and then again at the meeting with Cunningham, Russell, and Hyche later that day.  O'Neal Steel makes no objection that this conduct falls outside the specific allegations in the First Amended Complaint.  The company does object to Powell's statement against Hyche in the welders' meeting being characterized as protected conduct, arguing that he simply engaged in name-calling.

    Setting aside for the moment Powell's accusations in the welders' meeting, Powell's subsequent complaints about Hyche in the March 7 meeting with O'Neal Steel management personnel went further than name-calling and accused Hyche of discrimination because of specific acts, such as the incident with the welding tips.  Assuming *arguendo,* then, that Powell's accusations against Hyche at the welders' meeting were covered by Powell's pleadings, the court

11

finds that Powell's accusations on March 7 in the meeting with management do represent protected conduct within the meaning of Title VII and § 1981.

Therefore, Powell clearly has met the "protected conduct" element of his *prima facie* case because of his March 7 objections to O'Neal Steel management and his March 13 filing of an EEOC charge. Whether the remaining conduct identified – Powell's accusations in the welders' meeting – is indeed protected is less clear. Powell acknowledges that when he accused Hyche in the welders' meeting of being a racist and discriminating against him, he did not explain those accusations. He admits that he did not state the context of those accusations or otherwise specify what Hyche had said or done to him to cause those accusations; he assumed Hyche knew what he meant. However, because he put context to those accusations shortly thereafter, at a meeting with management on the same day, the court need not belabor this point. At the very least, Powell engaged in protected conduct by the end of his meeting with management on March 7, 2008.

Accordingly, his conduct of March 7, 2008 was protected conduct within the meaning of Title VII and § 1981 under the opposition clause, and his conduct of filing an EEOC charge on March 13, 2008 was protected conduct within the meaning of those same statutes under the participation clause. Powell meets this element of his *prima facie* case.

B. Materially Adverse Employment Actions

In his Amended Complaint, Powell identifies three actions as being materially adverse: denying Powell overtime, falsely accusing Powell of stealing, and assigning him harder tasks. Because Powell's brief opposing summary judgment did not argue that the stealing accusation or the assignment of harder tasks represented materially adverse actions, the court deems retaliation

12

claims based on those actions to be abandoned.  Accordingly, the remaining adverse action stated in the Amended Complaint is the denial of overtime.  Therefore, O'Neal Steel was on notice based on the Amended Complaint that it must defend a claim of retaliation based on a decision to deny overtime that occurred *after* Powell's protected conduct of objecting to discrimination and/or filing an EEOC charge.  The court agrees that the denial of overtime *could* represent a materially adverse action within the meaning of Title VII and § 1981.

In his brief, however, Powell identifies two new adverse actions:  warning Powell on March 7 that the company would not tolerate accusations of racism and prejudice; and giving Powell a bad job evaluation in June 2008.  In asserting these new adverse actions, he relies heavily on deposition testimony.  If Powell wanted to base his retaliation claim on these company actions, he should have said so in the Amended Complaint, but he did not.  Indeed, his former co-Plaintiff, John Nation, in the same Amended Complaint, asserted that "Defendant retaliated against Nation by issuing him a false evaluation . . . ." (doc. 16, ¶ 32).  Obviously, counsel could have repeated that same allegation in the list of adverse actions relating to Powell one sentence later, if that adverse action applied to Powell as well.  However, he did not.  Neither did Powell later file a Second Amended Complaint to add the new adverse actions he asserts in his brief.

In its reply brief, O'Neal Steel objects to these two theories of retaliation because they were not pled in the Amended Complaint, and argues that Powell should not be able to rely on these theories to oppose summary judgment.  The court agrees, and finds that Powell is limited to the retaliatory conduct pled in the Amended Complaint, and because Powell has abandoned all retaliatory conduct pled *except the denial of overtime*, his claim of retaliation must rest on that retaliatory conduct and no other.

13

This court's strict focus on the retaliatory conduct pled in the Amended Complaint is in accordance with Eleventh Circuit precedent.   In *Brown v. Snow*, 440 F.3d 1259 (11th Cir. 2006), the Eleventh Circuit affirmed a district court's refusal to address a retaliation claim based on retaliatory conduct not pled in the complaint.   In that case, the complaint stated a retaliation claim based on a denial of promotions.   In his deposition testimony and at the summary judgment stage, plaintiff attempted to assert a second theory of retaliation, based on termination, even though the complaint's retaliation count did not identify termination as an adverse action.   The district court granted summary judgment on the first retaliation theory and refused to address the second.   The Eleventh Circuit affirmed that ruling, finding that the second theory of  "retaliation by termination was not properly before the district court."   *Id.* at 1266.   The Court of Appeals rejected plaintiff's argument that his extensive discussion of the second retaliation theory in his deposition testimony meant that he could rely on that claim to oppose summary judgment. Noting that the plaintiff's complaint did not allege that he was terminated in retaliation for protected conduct and that he never amended his complaint to add a theory of retaliation based on that particular adverse action, the Eleventh Circuit found that "the discussion of a potential claim in a deposition does not satisfy the requirement of [Federal] Rule [of Civil Procedure] 8(a)." *Id.*

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Applying the requirements of Rule 8(a) to the instant case, the court finds that the Amended Complaint does not state a claim for retaliation based on the newly-asserted adverse actions of the March 7 warning and the June 2008 job evaluation.  The First Amended Complaint specifies three adverse actions that affected

Powell, and the newly-asserted adverse actions are not included.  To the extent that Plaintiff assumes his deposition testimony somehow placed those claims before the court, he is wrong; the requirements of Rule 8(a) require that he state those claims in his pleadings.  Accordingly, this court finds that any retaliation claims based on the adverse actions of the March 2007 warning and the June 2008 job evaluation are not properly before this court.

The court notes that Powell also relied on his March 7 protected conduct to oppose summary judgment, and that conduct was not *specifically* set out in the Amended Complaint, either.  The court recognized that the conduct may not have been covered by the pleadings but assumed *arguendo* that it was and proceeded to rule based on that assumption.  The court was not so generous when Powell also attempted to rely on newly-asserted adverse actions as retaliatory conduct.  One reason for this different treatment was that O'Neal Steel did not object to Powell's reliance on the March 7 protected conduct but objected strenuously to Powell's reliance on the "new" theories of retaliation.  Another reason is that the Amended Complaint did refer generally to Powell's objecting to discrimination, and O'Neal Steel obviously had notice of that objection; it discussed that objection with Powell on March 7, documented the objection in company records, and referred to that objection repeatedly in its brief supporting the motion for summary judgment.  However, O'Neal Steel did object to Powell's reliance on the "new" retaliatory conduct and did indeed appear to be surprised by Powell's introduction of new retaliation theories in his responsive brief.  In its original brief in support of summary judgment, O'Neal Steel did not refer to the March 7 "warning" or the June 2008 evaluation in its fact section or argument section.  O'Neal Steel was forced to address these matters for the first time in its reply brief.  This type of surprise is what Rule 8(a) is designed to prevent, and is one reason why the

15

Eleventh Circuit has required that adverse actions be identified in the pleadings. Therefore, the court limits the adverse action to the denial of overtime – the only adverse action that Powell relied upon in his responsive brief *and* pled in the Amended Complaint.

C. Causal Relation

O'Neal Steel also asserts that Powell has failed to establish a causal link between any protected conduct and a materially adverse action. To establish a causal connection in a retaliation action, the plaintiff must demonstrate "that the protected activity and the adverse action are not completely unrelated." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n. 52 (11th Cir. 2008) (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)). While the Eleventh Circuit interprets "the causal link requirement broadly," *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993), a plaintiff does not meet his causation burden by "merely showing that the alleged adverse action occurred *sometime after* the protected expression. . . – for temporal progression to be enough, the events must be in 'very close proximity.'" *Davis*, 516 F.3d at 978 n. 52 (emphasis added) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

As noted previously, the only properly pled and still viable adverse action is the denial of overtime. O'Neal Steel claims that the poor productivity evaluation and related prohibition from working overtime occurred *before* the protected conduct, i.e., before Powell objected on March 7, 2008 to Hyche's treatment and before he filed the EEOC charge on March 13, 2008. Thus, the protected conduct could not have caused the denial of overtime.

The timing of the materially adverse action in relation to the protected conduct is indeed crucial, as most of the events at issue occurred within a short period of time. The protected

16

conduct either preceded the adverse action and could therefore state a *prima facie* case, or the adverse action preceded the protected conduct and the *prima facie* case fails.  The protected conduct occurred on March 7, 2008 and March 13, 2008, so the issue is whether the denial of overtime occurred before or after March 7, 2008.   Unfortunately, Powell's own testimony is inconsistent regarding the specific date of the denial of overtime.  The court will explain why this inconsistency does not raise a genuine issue of material fact.

On one hand, Powell testified in his deposition that on the Tuesday or Wednesday *before* the March 7, 2008 meeting with O'Neal Steel management, Hyche gave him a slip of paper with the productivity evaluation and first told him he would not be eligible for overtime based on that evaluation.  Because he gave the Tuesday/Wednesday date at different points in the deposition and also agreed at several points that this date was *before* the Friday meeting, this testimony cannot be characterized as a mere slip of the tongue.  On the other hand, Powell also testified  in that same deposition that Hyche first denied him overtime *after* Powell's accusations against Hyche in the welders' meeting.  To characterize this testimony in the light most favorable to Powell, the court can only say that Powell was undoubtedly confused and had a poor grasp of chronology.  Powell admits as much in his deposition testimony.

In light of these troubling inconsistencies, the court turns to the parts of Powell's deposition testimony that are certain and consistent.  Regardless of the specific calendar date that Powell learned he would be denied overtime, Powell consistently testified that the denial coincided with receiving the five-day productivity evaluation.  Powell also consistently testified that he received the productivity evaluation at the end of a work day.  Further, the evidence also reflected that Powell's receipt of the *productivity evaluation* occurred sometime *prior to* Powell's

17

Friday meeting with O'Neal Steel management personnel. Despite Powell's difficulty with dates, he clearly acknowledged that Russell agreed at that Friday meeting to tear up the evaluation. Obviously, Powell would not have complained about a productivity evaluation he had not yet received. Similarly, Russell would not have agreed to tear up what was not yet in existence.

Both parties' "Undisputed Facts" set Powell's Friday meeting with O'Neal Steel management on March 7, 2008 (Pl.'s Undisputed Fact 16, Def.'s Undisputed Facts 15-17). Because the denial of overtime coincided with the receipt of the productivity evaluation, which occurred at the end of the work day sometime *prior to* March 7, Powell's protected conduct on or *after* March 7 must have occurred *after* the denial of overtime. His protected conduct, therefore could not have *caused* the denial. A causal connection may indeed exist between the overtime denial and Powell's protected conduct, but if so, the timing dictates that the overtime denial could have caused the protected conduct, but not the other way around. Acknowledging that inconsistencies exist about the calendar date of the denial of overtime, the court finds that these inconsistencies do not create a genuine issue of material fact when a logical look at the evidence dictates that the denial of overtime – whatever its calendar date – occurred before the protected conduct. *See Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 247-48 & 249-50 (1986) (stating that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" if the evidence raising the factual dispute is "merely colorable or is not significantly probative;" under those circumstances, the issue of fact is not genuine and summary judgment is appropriate.) (emphasis in original); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories,

18

one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for the purpose of ruling on a motion for summary judgment.").

In sum, the court finds that Powell's *prima facie* case of retaliation must fail because he has failed to establish a causal connection between the statutorily protected expression – Powell's objections on March 7, 2008 and the EEOC Charge filed on March 13, 2008 – and the pled materially adverse action – the denial of overtime, which occurred sometime *prior to* March 7, 2008. Accordingly, the court finds that O'Neal Steel's Motion for Summary Judgment is due to be GRANTED on Count II, the retaliation claim, brought pursuant to Title VII and § 1981.

## CONCLUSION

The court finds that Powell has expressly abandoned his claim for racial discrimination set forth Count I, and thus, O'Neal Steel's motion for summary judgment is due to be GRANTED as to Count I. Further, the court finds that Powell has failed to meet his *prima facie* case on the retaliation claims pled in Count II of the First Amended Complaint and brought pursuant to Title VII and § 1981; thus, the court finds that O'Neal Steel's motion for summary judgment is due to be GRANTED as to the Count II claims. Accordingly, the court will GRANT O'Neal Steel's motion in its entirety, and will enter judgment on behalf of Defendant as to all counts.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 31st day of March, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

19